**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ZELMA HINDMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )   **Case No. 05-CV-306-TCK-PJC** |
| | ) |
| DONALD THOMPSON, CREEK | ) |
| COUNTY, AND THE STATE OF | ) |
| OKLAHOMA, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the State of Oklahoma's ("State") Motion for Summary Judgment (Doc. 37),  Supplemental Motion for Summary Judgment (Doc. 83),[1] and Defendant Donald Thompson's Amended Motion for Partial Summary Judgment (Doc. 45).

**I.      Background**

In March 1999, Plaintiff Zelma Hindman ("Plaintiff") was hired by then-Creek County District Judge Donald Thompson ("Thompson" or "Defendant Thompson") as his secretary/bailiff. During 2001, Plaintiff viewed a "tube with a cylinder" under Judge Thompson's bench (later identified as a "penis pump") on various occasions.  (Trial Tr. at 150, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 21, 2006, Ex. 2 to State's Mot. for Summ. J.)[2]  Thereafter, in 2003, Plaintiff heard "unusual" sounds in Judge Thompson's courtroom on two or three occasions, which

---

[1] The State's Supplemental Motion for Summary Judgment was filed in accordance with this Court's Order of March 23, 2007.  Therein, the Court permitted the State to file an amended Answer in order to raise the *Faragher/Ellerth* defense to Plaintiff's claim for Title VII hostile work environment.  (*See* Doc. 73).  The Court also directed the State to "supplement its Motion for Summary Judgment with any argument related to the *Faragher/Ellerth* defense."  (Doc. 73 at 2.)

[2] The parties submitted testimony from the criminal jury trial against Defendant Thompson. Thompson was convicted of four felony counts of indecent exposure and later sentenced to four years in prison.

she thought were caused by the air conditioning.  (*Id.* at 151-52.)  In August 2003, during a jury trial

before Defendant Thompson, Plaintiff returned from an errand and opened the door to the courtroom

from the Clerk's office.  She observed Thompson with a plastic tube on his penis ("pump" or "penis

pump") and "what appeared to be his penis in his left hand."  (*Id.* at 140.)[3][4]  After this encounter,

Plaintiff testified that she decided to look for another job.  (*Id.* at 155.)  She told Lisa Foster

("Foster"), Thompson's court reporter, that she was going to look for another job, although she did

not tell Foster what she had seen.  (*Id.* at 152-53.)  Plaintiff testified that Thompson fired her on

September 26, 2003.  Specifically, Thompson first asked Plaintiff if she had found another job, to

which she responded "no."  (*Id.* at 154.)  Thompson then said "you're fired," and instructed Plaintiff

to leave her keys on her desk.  (*Id.*)[5]

---

[3] In his Amended Motion for Partial Summary Judgment, Defendant Thompson cites to other testimony wherein Plaintiff stated that "she got a glimpse and saw flesh" and "I honestly thought I saw his penis . . . It could have been his hand.  I don't want to say something that isn't true . . . ." (Def. Thompson's Am. Mot. for Partial Summ. J. 3.)  Resolving all factual disputes in favor of Plaintiff, the non-moving party, the Court will assume that Plaintiff saw Thompson's penis.

[4] In August 2003, other individuals heard the "sh-shh" sound of Thompson's penis pump. Specifically, while testifying on the witness stand during trial, Detective Mike Reed heard the sound and observed Thompson with something "white and hard" and "plastic looking" in Thompson's right hand.  According to Reed's testimony, every time he observed Thompson's hand move up and down, Reed would hear the "sh-shh" noise.  (Trial Tr. at 168, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 20, 2006, Ex. 1 to  State's Mot. for Summ. J.)  Captain Brent Green and Chief Jim Wall of the Sapulpa Police Department were present in the courtroom when Detective Reed was on the witness stand and also heard the noise.  After Reed testified during the trial, Green and Wall asked Reed if he had heard the noise, and Reed told them what he had seen.  Reed and Green then went behind Thompson's bench and observed the pump laying on the floor.  Wall thereafter telephoned the Council on Judicial Complaints to lodge a complaint against Defendant Thompson.

[5] In Plaintiff's Complaint, she alleges that Thompson reported her termination to the Court Administrator for the State of Oklahoma on or about January 4, 2004.  (Pl.'s Compl. ¶ 6.)

2

Plaintiff was fired immediately after Thompson fired Foster.[6] The previous day, on September 25, 2003, Foster had testified before the Council on Judicial Complaints ("Council") regarding her observations of Thompson using a penis pump on multiple occasions, putting lotion on his penis, shaving his scrotum, and urinating in a trash can.  According to Foster's testimony, Defendant Thompson called Foster into his office on September 26, 2003 and asked her if she was looking for another job.  Thompson also asked Foster if she had something she "need[ed] to tell the police about [him]."  (Trial Tr. at 121, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 26, 2006, Ex. 1 to Pl.'s Resp. to State's Mot. for Summ. J.)  Foster told Thompson that she "already told someone in Oklahoma City," and Thompson then asked her to tell him what she said in Oklahoma City.  (*Id.* at 122.)  Foster asked Thompson if he was firing her, and, according to Foster's testimony, he said "yes, I think that would be the best." (*Id.*)  Finally, Foster also testified that Thompson told her that he was going to fire Plaintiff as well.  (*Id.*)

It was not until after Plaintiff was terminated that she discussed what she had observed – namely, Thompson's use of a penis pump during the August 2003 trial – with another individual. Specifically, the evening after she was fired, she was called by Duke Logan, an investigator for the Council.  Logan asked Plaintiff to meet him the next morning at the police station.  Subsequent to her interview with Logan, Plaintiff testified before the Council.

Plaintiff thereafter filed suit, asserting claims against the State for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, wrongful discharge, and intentional infliction of emotional distress.  Plaintiff further asserted claims against Defendant Thompson for

---

[6] Foster has also brought suit against the State and Thompson, alleging identical claims as have been brought by Plaintiff.  Foster's suit is also before this Court.  (*See* Case No. 05-cv-305-TCK.)

3

violation of 42 U.S.C. § 1983, tortious interference with employment, and intentional infliction of emotional distress.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    State of Oklahoma's Motion for Summary Judgment

The State's Motion for Summary Judgment asserts that summary judgment is proper as to Plaintiff's Title VII and wrongful discharge claims. (*See* State's Mot. for Summ J. 13-16.)[7] At the outset, the Court notes that although the State's Motion for Summary Judgment was sixteen pages

---

[7] The State also argued that summary judgment was proper as to Plaintiff's section 1983 claim. However, inclusion of this claim in its Motion for Summary Judgment was in error, as this claim is asserted only against Defendant Thompson. (*See* Pl.'s Compl. ¶ 10 (stating that "**Judge Thompson** . . . deprived Ms. Hindman of her constitutional rights, including her rights of Equal Protection, Free Speech and Freedom of Association, in violation of 42 U.S.C. § 1983"); Pl.'s Resp. to State's Mot. for Summ. J. 9 ("The State seeks summary judgment on Hindman's 42 U.S.C. § 1983 claim. However, she has alleged that claim against Thompson, not the State, as is made clear by paragraph 10 of Hindman's First Claim for Relief . . . .").) Accordingly, the Court will not respond to this argument.

4

in length, only three and a half of those pages provide any argument as to why summary judgment should be granted in favor of the State. Further, with regard to certain claims, there is absolutely no legal citation or analysis provided. The Court simply finds this unacceptable. Such a paltry job by the Office of the Attorney General, in addition to demonstrating a complete lack of effort and diligence, does a disservice to the citizens of the State it purports to represent. The State seems to believe that it is the Court's job to create, imply, or research arguments on its behalf. Such is not the case, however, and the State should be more thorough in its argument and legal research in future briefs before this Court.[8]

A.      **Title VII**

Plaintiff has alleged two claims against the State pursuant to Title VII. Specifically, Plaintiff claims that the State, by and through Judge Thompson: (1) subjected her to a sexually hostile work environment; and (2) terminated her employment in retaliation for opposing that environment.[9] The State argues that summary judgment is appropriate because: (1) Plaintiff is prevented from asserting any claim under Title VII pursuant to the personal staff exemption; (2) the State is protected by the *Faragher/Ellerth* defense; (3) Plaintiff cannot demonstrate that Defendant Thompson discriminated against her on the basis of her sex; and (4) Plaintiff did not report Thompson's misconduct before she was terminated.

_____

[8] The Court also notes that the State did a poor job of identifying and separating the exhibits attached to its briefing. For example, both Exhibits 3 and 4 to the State's Motion for Summary Judgment include testimony from Foster in the case of *State of Oklahoma v. Donald D. Thompson*, CF-2005-16. Exhibit 4, however, also includes one page of testimony from Thompson, without any clear identification that the witness testifying is no longer Foster, but is instead Thompson. (Trial Tr. at 164, *State of Oklahoma v. Donald D. Thompson*, CF-2005-16, June 27, 2006, Ex. 4 to State's Mot. for Summ. J.)

[9] The State fails to clearly distinguish these two claims in its briefing before the Court.

### 1.    Personal Staff Exemption

In its Supplemental Motion for Summary Judgment, the State argues for the first time that Plaintiff does not fall within the classification of individuals to which Title VII applies.  Title VII exempts from its definition of "employee" "any person chosen by [an elected] officer to be on such officer's personal staff" ("personal staff exemption").  42 U.S.C. § 2000e(f).[10]  According to the State, because Plaintiff was a member of the "personal staff" of Thompson, a person "elected to public office," she is not an "employee" who enjoys the protections offered by Title VII.  Plaintiff responds by arguing that the State has waived its ability to now assert this argument because it did not previously plead the personal staff exemption as an affirmative defense.

As stated by the Fifth Circuit in *Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir. 2001), "the personal staff [exemption] is an affirmative defense that must be pleaded under [Federal Rule of Civil Procedure] 8(c)." (citing *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 327 (5th Cir. 1981) (concluding that an exemption under the Fair Labor Standards Act is an affirmative defense that is waived if not pleaded); *Brennan v. Valley Towing Co.*, 515 F.2d 100, 104 (9th Cir. 1975) (holding that an exception under the Fair Labor Standards Act must be pleaded as an affirmative defense); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271 (3d. ed. 2004)).  The State therefore waived the personal staff exemption, as it failed to include such defense in both its original and Amended Answer (*See* Docs. 7 & 77).  *See Oden*, 246

---

[10]  The Tenth Circuit has noted that the personal staff exemption arguably does not apply when the plaintiff's claims are based on the section of Title VII that makes it illegal to discriminate against any *individual*, rather than any "employee."  *Starrett v. Wadley*, 876 F.2d 808, 821 n.18 (10th Cir. 1989) (citing 42 U.S.C. § 2000e-2(a)).  However, the Tenth Circuit held that it was "clearly the intent of Congress that the term 'employee' . . . should apply to any person who has a right to bring an action under the Act . . . ."  *Starrett*, 876 F.2d at 821 n.18 (internal citations omitted).

F.3d at 467 (stating "Appellants waived the personal staff exception by failing to raise it in a responsive pleading").[11]

### 2. *Faragher/Ellerth* defense

The State asserts the *Faragher/Ellerth* defense, arguing that it cannot be held liable for the actions of Thompson, its employee.   *See Burlington Indus., Inc.*, *v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).   Pursuant to said defense, employers are not automatically liable for hostile work environment sexual harassment perpetrated by their employees. However, if the perpetrator of the hostile work environment sexual harassment is a supervisor with immediate or successively higher authority over the plaintiff, a plaintiff can establish vicarious liability on the part of the employer in one of two ways.   First, a plaintiff can demonstrate that the supervisor's behavior "culminate[d] in a tangible employment action" against the plaintiff (*e.g.*, discharge, demotion, or undesirable reassignment).   *Ellerth*, 524 U.S. at 765.   Under such circumstances, the employer is vicariously liable for the supervisor's behavior, and no affirmative defense is available.   *Id.* at 762-63, 765.   Second, even absent a tangible employment action, an

_____

[11] In a somewhat incoherent argument, it appears the State attempts to argue that the personal staff exemption can be asserted at any time because it is an issue of subject matter jurisdiction. (*See* State's Reply to Pl.'s Resp. to Supplemental Mot. for Summ. J. 1-2.)   However, given *Oden's* clear language indicating that a party waives its right to assert the personal staff exemption if said defense is not affirmatively stated in a responsive pleading, the Court rejects any such argument made by the State.

The Court also rejects the State's attempt to distinguish *Oden* by arguing that *Oden's* holding was "based in large part upon the fact that the defendant had not plead the personal staff exemption until *__after trial__*." (*See id.* 2.)  The Fifth Circuit did not appear to limit its holding to only those cases in which the defense was raised after trial, and, the Fifth Circuit's rationale that a party should not be able to "ambush a plaintiff with an unexpected defense" applies equally to this case.  *Oden*, 246 F.3d at 467.  Defendant raised the personal staff exemption in its Supplemental Motion for Summary Judgment, which was filed after the discovery period had terminated in this case.  Therefore, even if the Fifth Circuit did intend to limit its holding in the manner suggested by the State, which the Court questions, the rationale employed in *Oden* supports waiver of the exemption in this case.

employer will still be liable for a hostile work environment created by one of its supervisory employees unless it proves, by a preponderance of the evidence, a two-pronged affirmative defense: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

The Court finds the State is unable to avoid liability based upon the *Faragher/Ellerth* defense.  The record clearly demonstrates that Thompson was Plaintiff's supervisor, and an adverse employment action was taken against Plaintiff when Thompson terminated her from employment. *See Penn. State Police v. Suders*, 542 U.S. 129, 137 (2004) (stating that under *Faragher* and *Ellerth*, employers are strictly liable for harassment that "culminates in a tangible employment action, such as *discharge*, demotion, or undesirable reassignment") (emphasis added); *McInnis v. Fairfield Cmtys.*, 458 F.3d 1129, 1141 (10th Cir. 2006) (stating the "*Faragher/Ellerth* defense does not apply in cases where the employer takes an adverse employment action) (holding that defense did not apply in case before it because defendant terminated plaintiff's employment); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (stating that an "adverse employment action includes [but is not limited to] those acts that 'constitute[ ] a significant change in employment status, such as . . . firing . . . .'") (emphasis added) (internal citations omitted).

### 3.    "Because of Sex"

The State also argues that summary judgment is proper as to Plaintiff's Title VII claims because Plaintiff is unable to demonstrate that Thompson "discriminate[d] on the basis of sex as to his bizarre behavior."  (State's Mot. for Summ. J. 14.)  In order to succeed on her hostile work environment claim, Plaintiff "must produce evidence that she was the object of harassment *because*

8

of her gender." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (emphasis added). Title VII is not a code of workplace conduct, nor was it "designed to bring about the magical transformation in the social mores of American workers." *Velasquez v. Frontier Med. Inc.*, 375 F. Supp. 2d 1253, 1265 (D.N.M. 2005) (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1538 (10th Cir. 1995)). Rather, Title VII targets discrimination based on gender, and "if the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994). As explained by the Supreme Court, the critical issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

In the instant case, Plaintiff is unable to demonstrate that Thompson's allegedly harassing behavior – namely, the fact that Thompson used the penis pump and had his penis exposed – was due to Plaintiff's gender. In assessing whether such conduct was due to Plaintiff's gender, the focus of the analysis is on Thompson's motivation for the offensive conduct. *See Oncale*, 523 U.S. at 79-80 (examining the question of what "because of sex" means, focusing on the harasser's motivation for the offensive conduct and reaffirming that the critical issue is discriminatory intent); *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (analyzing alleged harasser's motive in determining whether harassment was "because of sex"); *Gillming v. Simmons Indus.*, 91 F.3d 1168, 1171-72 (8th Cir. 1996) (affirming a jury instruction that required the jury to find that the harassing acts were intentional and motivated by gender). Although the Court finds Thompson's behavior incredibly offensive, vulgar, and crude, Plaintiff has not met its obligation under Rule 56(e) in demonstrating "specific facts showing that there is a genuine issue for trial" as to the motivation

9

behind Thompson's behavior.  Fed. R. Civ. P. 56(e).  Specifically, Plaintiff has failed to present *any* facts regarding Thompson's motivation, much less any facts demonstrating that Thompson's behavior was the result of any hostility toward women.  *See Linville v. Sears, Roebuck and Co.*, 335 F.3d 822, 824 (8th Cir. 2003) (considering same in finding that plaintiff failed to provide evidence that the alleged harassment was "based on sex").  Absent facts demonstrating that Thompson's conduct was motivated in some manner by Plaintiff's gender, Plaintiff's claim cannot survive summary judgment.

Further, the record reflects that Thompson's offensive behavior took place in a courtroom which was comprised of both men and women, suggesting that Thompson was indiscriminate in terms of who might be affected by the fact that he was committing such acts.  While the Court agrees with Plaintiff's argument that in some circumstances, exposure of men and women to sexually offensive material or conduct can be the basis for a hostile work environment claim, Plaintiff must still demonstrate evidence of discriminatory intent.  Thus, although the mere fact that both men and women could have been exposed to Thompson's conduct is not dispositive, it is indicative of the lack of discriminatory intent on the part of Thompson.  *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) (stating "sex-neutral hostile conduct cannot be used to support a hostile environment claim [because] Title VII does not protect employees from hostile conduct that is not based on their protected status"); *Nigro v. St. Tammany Parish Hosp.*, 377 F. Supp. 2d 595, 600-01 (E.D. La. 2005) (finding there was no evidence that the allegedly harassing comments were directed at plaintiff because of his sex when such comments were made to males and females); *Landrau Romero v. Caribbean Rests., Inc.*, 14 F. Supp. 2d 185, 190 (D. P.R. 1998) (finding that the "record is replete with examples of [the alleged harasser's] behavior in front of both sexes" and that the harasser "did not reserve his tasteless comportment for male employees").

Moreover, the evidence provided to the Court suggests that Thompson was unaware that anyone, much less Plaintiff, was able to view his conduct, further impeding Plaintiff's ability to demonstrate that Thompson's conduct was the result of her sex. Specifically, Plaintiff's testimony indicates that Thompson was "shocked" when she walked in the courtroom and viewed him with the penis pump. (6/21/06 Tr. at 140.) Plaintiff further testified that Thompson immediately "lurched forward," suggesting that he was attempting to hide his actions from her. (*Id.*) The inference that Thompson did not want Plaintiff to view his activity suggests that said activity was not directed at Plaintiff and that Plaintiff's gender played no part in the alleged harassment. *See Hanley v. Chevy Chaser Magazine, LLC*, No. 05-6517, 2006 WL 2787036, at *3 (6th Cir. Sept. 26, 2006) (finding that sexually explicit e-mails were not valid basis for sexual harassment claim because such e-mails were meant to be private, and therefore were not directed at plaintiff); *Cronin v. Martindale Andres & Co.*, 159 F. Supp. 2d 1, 6 (E.D. Pa. 2001) (finding that because offensive materials at issue were not aimed at plaintiff, and she instead discovered such materials due to her own efforts, such materials could not form basis of sexual harassment claim).

The Court has no doubt that Plaintiff worked in a difficult environment and experienced distress from her observations of Thompson's conduct. However, Title VII only protects against discriminatory treatment, and rather than being motivated by Plaintiff's gender, the record reflects that Thompson's conduct was motivated by poor judgment and vulgarity. As such, Plaintiff's Title VII hostile work environment claim cannot survive summary judgment. *See Penry*, 155 F.3d at 1263.[12]

---

[12]   The Court conducted an exhaustive search of Title VII case law and was unable to find any case with similar facts to those at issue – *i.e.*, where a plaintiff brought a sexual harassment claim after the alleged harasser exposed himself in a public location, although did so in a secretive manner, so that *any* person in such location, whether male or female, could have viewed such

### 4.    Plaintiff's Failure to Report Thompson's Conduct Prior to Termination

With regard to Plaintiff's Title VII retaliation claim, the State appears to attack Plaintiff's ability to make a prima facie case of retaliation when it argues that "Plaintiff had not testified or given a statement about Defendant Thompson's activities when she was fired."  (State's Mot. for Summ. J. 14.)[13]  In order to establish a prima facie case of retaliation, "[plaintiff] must show (1) she engaged in protected opposition to discrimination; (2) [plaintiff's employer] took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action."  *See Dick v. Phone Directories Co., Inc.*  397 F.3d 1256, 1267 (10th Cir. 2005).

In many circumstances, the occurrence of the adverse employment action prior to the alleged protected activity renders a plaintiff unable to bring a retaliation claim.  *See, e.g. Hill v. Steven Motors Inc.*, 97 Fed. Appx. 267, 280 (10th Cir. 2004) (finding that because employer's alleged adverse action occurred before employee's first protected activity, it could not constitute valid basis for retaliation claim); *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1253 (D. Kan. 2007) (noting that plaintiff's filing of an EEOC charge could not support retaliation claim when plaintiff's termination occurred ten months prior to the filing of the charge).  However, in *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993), the Tenth Circuit permitted a retaliation claim despite the fact that plaintiff suffered an alleged adverse employment action (reassignment) *prior to* "tak[ing] any action against which [the alleged harasser] could retaliate."

---

exposure.  The exposure cases found by the Court were inapposite to this matter in that the alleged harasser purposefully exposed himself *to the plaintiff* and there was no question as to whether the harasser intended the plaintiff to view such conduct.  *See, e.g. Williams v. Mo. Dep't of Mental Health*, 407 F.3d 972, 974 n.3 (8th Cir. 2005) (alleged harasser "approached [plaintiff] and pulled down his pants to expose his genitals [and] then said, "Man, look how hard it is").

[13] This is the States's only argument with regard to Plaintiff's ability to demonstrate her Title VII retaliation claim, and it is therefore the only issue addressed by the Court.

Specifically, in *Sauers*, Plaintiff introduced evidence of a tape-recorded conversation, wherein the harasser asserted he was concerned about someone filing a sexual harassment charge against him.  Plaintiff was reassigned two days after said conversation took place. The court found that the "tape-recorded conversation . . . indicates [the harasser's] fear that a sexual harassment complaint might soon be filed by the plaintiff." *Id.*  In so finding, the court held that "[a]ction taken against an individual *in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact*; consequently, we hold that this form of preemptive retaliation falls within the scope of 42 U.S.C. § 2000e-3(a)." (emphasis added); *see U.S. E.E.O.C. v. Bojangles Rests., Inc.*, 284 F. Supp. 2d 320, 328 (M.D.N.C. 2003) ("Even though the language of [Title VII] is written in the past tense and appears to assume that protected activity occurred at some point in the past and prior to any retaliation (i.e., 'participated' and 'assisted'), it covers preemptive employer actions.") (citing *Sauers*, 1 F.3d at 1228).

The Court's review of the record indicates there is evidence suggesting Thompson could have terminated Plaintiff because of a fear that she would engage in protected activity.  Thompson fired Plaintiff immediately after firing Lisa Foster, and, at that time, Thompson was aware that Foster had recently been subpoenaed to testify before the Council.  This pattern of events could raise an inference that Thompson's termination of Plaintiff was driven by fear that she would report her observations of his use of the penis pump, as had Foster.[14]  Accordingly, the Court finds the State's

---

[14]   Neither party has addressed whether reporting her observations to investigator Logan or testifying before the Council constitutes protected activity for the purposes of Plaintiff's retaliation claim, so the Court declines to address this issue herein.  Accordingly, the Court's ruling on the State's motion for summary judgment as to the retaliation claim should not be read as finding that said discussions and/or testimony constitute protected activity.  The parties are directed to address this issue in their trial briefs.

argument that "Plaintiff had not testified or given a statement about Defendant Thompson's activities when she was fired" is insufficient to mandate summary judgment.

### B.   Wrongful Discharge

In support of its Motion for Summary Judgment as to Plaintiff's wrongful discharge claim, the State offers a mere five sentences of argument.  (*See* State's Mot. for Summ. J. 15.)  These sentences provide generalized and conclusory assertions that are insufficient to demonstrate the appropriateness of summary judgment.  Further, the State fails to include any legal citation or analysis in advocating for summary judgment as to the wrongful discharge claim.  The Court is unwilling to grant summary judgment to the State on such a basis.  The State's Motion for Summary Judgment is accordingly DENIED as to this claim.

However, given that Plaintiff has characterized this claim as a "*Burk* tort," (*see* Pl.'s Resp. to State's Mot. for Summ. J. 10), Plaintiff should be prepared to identify at the pre-trial conference "an Oklahoma public policy goal that is clear and compelling and is articulated in existing Oklahoma constitutional, statutory or jurisprudential law."  *Clinton v. State ex. rel. Logan County Election Bd.*, 29 P.3d 543, 546 (Okla. 2001); *see Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989) (holding that an employee who is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy may bring a tort claim for wrongful discharge).

### C.   Intentional Infliction of Emotional Distress

The State did not move for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress in its Motion for Summary Judgment.  However, after Plaintiff pointed out this omission in her response brief, the State included argument as to this claim in its reply brief.  Specifically, the State argues that Plaintiff's intentional infliction of emotional distress claim must

fail because the State is immune pursuant to the Governmental Tort Claims Act ("GTCA").  Despite

the State's failure to appropriately move for summary judgment as to Plaintiff's intentional infliction

of emotional distress claim, the Court will address the State's argument given the existence of

Oklahoma case law that is directly on point.

Pursuant to the GTCA, the State is only liable "for loss resulting from . . . the torts of its

employees acting within the scope of their employment . . . ."  and "shall not be liable . . . for any

act or omission of an employee acting outside the scope of his employment."  Okla. Stat. tit. 51, §

153.  A governmental employee, such as Defendant Thompson, only acts within the scope of his

employment when he acts in good faith.  *See McMullen v. City of Del City*, 920 P.2d 528, 530 (Okla.

Civ. App. 1996).  Therefore, in order to hold the State liable for Thompson's actions, Plaintiff must

show that Thompson acted in good faith at all relevant times.

However, in order to prove her claim of intentional infliction of emotional distress, Plaintiff

must demonstrate that Thompson's behavior was "outrageous," *see Breeden v. League Services*

*Corporation*, 575 P.2d 1374, 1376-77 (Okla. 1978)), and it is well-established that Plaintiff cannot

meet this element if Thompson was acting in good faith.  *See McMullen*, 920 P.2d at 531 ("There

is no way to prove a claim for [intentional infliction of emotional distress] if the defendant has acted

in good faith.") (citing *Hawkins v. Greene*, 311 S.C. 88, 427 S.E.2d 692, 693 (Ct. App. 1993) for

proposition that defendant's conduct cannot be characterized as "outrageous" if he is acting in good

faith).  Accordingly, because the State is only liable for Thompson's actions if he acted in good

faith, and because Plaintiff is unable to meet the elements of her claim for intentional infliction of

emotional distress if Thompson acted in good faith, Plaintiff's intentional infliction of emotional

distress claim against the State fails, and summary judgment is GRANTED as to this claim.

15

**IV.      Defendant Thompson's Amended Motion for Partial Summary Judgment**

Defendant Thompson moves for summary judgment as to Plaintiff's First Claim of Relief (Violation of Constitutional Rights), wherein Plaintiff alleges that Defendant, acting under color of State law, deprived her of certain constitutional rights in violation of 42 U.S.C. § 1983. Defendant also seeks a determination from this Court limiting the time period for which Plaintiff may pursue her claim for money damages.

**A.      Plaintiff's § 1983 Claim**

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In her response brief, Plaintiff clarifies the basis of her section 1983 claim. Specifically, Plaintiff states that Defendant "violated her constitutional right to equal protection by creating a sexually hostile work environment and . . . deprived her of her First Amendment right of free speech by firing her in retaliation for giving testimony before the Council." (Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ. J. 3.)[15]

**1.      Equal Protection Violation**

An allegation of sexual harassment is actionable under section 1983 as a violation of the Equal Protection Clause of the Fourteenth Amendment.[16]  *Noland v. McAdoo*, 39 F.3d 269, 271

---

[15]     In her first cause of action, Plaintiff's Complaint alleges that Defendant Thompson "deprived [her] of her constitutional rights, including her rights of Equal Protection, Free Speech and Freedom of Association." (Pl.'s Compl. ¶ 10.) Neither party provides argument as to Plaintiff's "Freedom of Association" allegation and, accordingly, the Court does not treat such allegation herein.

[16]   The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

16

(10th Cir. 1994) (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).  The Tenth Circuit has noted that what constitutes a hostile work environment in the context of section 1983 is not clearly established in this circuit.  *See Mitchell v. City & County of Denver*, 112 Fed. Appx. 662, 671 n.11 (10th Cir. 2004).[17]  However, the Tenth Circuit has stated that in order to recover under a section 1983 equal protection claim for sexual harassment, Plaintiff "must establish that . . . [Defendant] discriminated against her *because of her sex*."  *Noland*, 39 F.3d at 272 (citing *Starrett*, 876 F.2d at 815) (emphasis added); *see MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1166-67 (D. Utah 2005) (stating that "[i]n order to state a viable equal protection claim under § 1983, 'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class'") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) and *Washington v. Davis*, 426 U.S. 229, 240 (1976)).[18]  For the reasons described in Section III.A.3 *supra*, the Court finds Plaintiff is unable to demonstrate that Defendant Thompson's allegedly harassing behavior was due to her gender.  Therefore, Plaintiff is unable to

---

[17]  The Tenth Circuit has clearly held, however, that the elements of a disparate treatment claim are the same whether the case is brought under section 1983 or Title VII.  *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007).

[18]  Caselaw from other circuits indicates that those circuits that have considered the issue have concluded that "[s]exual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation and the elements of a prima facie case are the same regardless of which statute the plaintiff uses to seek relief."  *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005); *see Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (stating "the analysis for [a section 1983 claim for violation of the equal protection clause due to sex based discrimination] is similar to that used for employment discrimination claims brought under Title VII, the difference being that a section 1983 claim, unlike a Title VII claim, can be brought against individuals); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (stating "[c]ourts may apply the standards developed in Title VII litigation to similar litigation under § 1983").  Although it is likely that the Tenth Circuit would follow suit, this Court need not decide the issue since it is clear that Plaintiff, at the very least, must show that the alleged harassment was sex-based.  *See Noland*, 39 F.3d at 272.

sustain her claim that Defendant Thompson violated her constitutional right to equal protection by creating a sexually hostile work environment.  Defendant Thompson's Amended Motion for Partial Summary Judgment is therefore GRANTED as to this claim.

### 2.    Freedom of Speech Violation

With regard to Plaintiff's argument that Defendant Thompson deprived her of her First Amendment right to free speech by firing her, Thompson argues that "a theory of liability for retaliatory conduct [does not] come within [section] 1983." (Def. Thompson's Am. Mot. for Partial Summ. J. 8.)  Although the cases cited by Defendant in support of this argument do indeed stand for the proposition that the rights created by Title VII, including the right to be free from retaliatory conduct, may not be asserted as the basis for a section 1983 claim,[19] this principle does not assist Defendant Thompson.  Specifically, this aspect of Plaintiff's section 1983 claim is not predicated upon a violation of Title VII, but rather upon a violation of the First Amendment, and such claim is actionable under section 1983 even if there exists a factual overlap with Plaintiff's Title VII allegations.  *See Starrett*, 876 F.2d at 813-14 (stating if "a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application") (permitting plaintiff's section 1983 claim despite factual overlap with Title VII allegations because section 1983 claim was premised on the First Amendment); *see also Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182 (10th Cir. 2002) (plaintiff brought Title VII retaliation claim against Utah Department of Corrections and section

---

[19]  *See Maldonado v. City of Altus*, 433 F.3d 1294, 1308 (10th Cir. 2006); *Long v. Laramie County Cmty. Coll. Dist.*, 840 F.2d 743, 752 (10th Cir. 1988) (stating that a theory of liability under federal law for retaliatory conduct does not come within section 1983); *Meade v. Merchants Fast Motor Line, Inc.*, 820 F.2d 1124, 1125 n.1 (10th Cir. 1987) (stating that rights created by Title VII may not be asserted as the basis for a cause of action under section 1983); *Tafoya v. Adams*, 816 F.2d 555, 557-58 (10th Cir. 1987).

1983 First Amendment claim against individual defendants for same allegedly retaliatory conduct); *Paradis v. Montrose Mem'l Hosp.*, 157 F.3d 815 (10th Cir. 1998) (plaintiffs alleged that defendant retaliated against them in violation of their First Amendment rights after they reported, *inter alia*, sexually harassing behavior by supervisor and brought claim pursuant to section 1983); *Nieto v. Kapoor*, 182 F. Supp. 2d 1114 (D.N.M. 2000) (plaintiff brought section 1983 claim based on retaliation for protected speech in violation of the First Amendment).

In determining whether a public employer impermissibly retaliated against a public employee in violation of the employee's First Amendment rights, the Tenth Circuit has instructed courts to utilize a five-part test based on the Supreme Court cases of *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006) ("*Garcetti/Pickering* analysis"). *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). The *Garcetti/Pickering* analysis requires the following steps:

> First, the court must determine whether the employee speaks pursuant to [his] official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.[20] Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in [a] detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

---

[20] The first step was added by the Tenth Circuit in 2007 based on the Supreme Court's decision in *Garcetti*. *See Brammer-Hoelter,* 492 F.3d at 1202.

*Id.* (internal citations and quotations omitted) (footnote added).  "The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact."  *Id.*; *see also Weaver v. Chavez*, 458 F.3d 1096, 1100 (10th Cir. 2006) ("The first two inquiries are questions of law for the court to decide because they concern whether the expression at issue is subject to the protection of the First Amendment.  The third and fourth steps are questions to be resolved by the jury because they concern causation.") (quotation and citation omitted).[21]

Defendant Thompson's Amended Motion for Partial Summary Judgment does not include mention of this analysis or any application of said framework.  Rather, in support of his argument that summary judgment is proper as to Plaintiff's section 1983 First Amendment claim, Defendant Thompson cites to the general burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), which is applied in the Title VII context.  In her response brief regarding this claim, Plaintiff cites to *Connick v. Myers*, 461 U.S. 138 (1983), which is cited in *Garcetti* and *Brammer-Hoelter* and partially forms the basis for the five-part analysis outlined above.  However, although Plaintiff identified the relevant framework for First Amendment retaliation claims, Plaintiff did not provide any argument as to the five-step test currently applied by the Tenth Circuit.

Accordingly, given that Thompson has not even addressed the proper legal framework, he certainly has not demonstrated that he is entitled to summary judgment on this claim at this time.  Nonetheless, the Court desires arguments from the parties on this issue in advance of trial.  The parties shall thus include discussion, applying of each of the five steps of the *Garcetti/Pickering* analysis to Plaintiff's section 1983 First Amendment claim, in their trial briefs.  The parties should

---

[21]  *Weaver* was decided prior to addition of the first step and therefore refers to a four-step test.

specifically address whether, in the context of her section 1983 First Amendment claim (as opposed to her Title VII retaliation claim), Plaintiff can show that her speech was a substantial or motivating factor in her termination (as required by the fourth step of the *Garcetti/Pickering* analysis), given that said speech occurred *after* she was terminated.

**B.    Limitation of Plaintiff's Damages**

In his Amended Motion for Partial Summary Judgment, Defendant Thompson argues that the Court should find, as a matter of law, "that the period during which Plaintiff may pursue her alleged damages is limited to the period from January 5, 2004 through September 1, 2004." (Def. Thompson's Am. Mot. for Partial Summ. J. 17.)   In discovery responses issued to Defendant Thompson, Plaintiff maintains that she seeks "lost back pay and front pay." (*Id.* Ex. D at 6.) Because Defendant Thompson resigned his position on September 1, 2004, Thompson argues that Plaintiff cannot prove she would have retained her position as "secretary/bailiff" after the date of his resignation. (Def. Thompson's Am. Mot. for Partial Summ. J. 17.)  Accordingly, it is Defendant Thompson's position that Plaintiff's claim for lost income "must necessarily be limited to [the] time between her discharge and the date of Thompson's resignation."  (*Id.*).

In response, Plaintiff objects to Defendant Thompson's conclusion that she would not have maintained her employment as "secretary/bailiff" after his resignation.  Specifically, Plaintiff argues that "there is every reason to believe that [Thompson's] replacement would have retained [her] as his or her secretary/bailiff in light of her experience."  (Pl.'s Resp. to Def. Thompson's Am. Mot. for Partial Summ. J. 9.)

The Court finds Defendant Thompson has not met his burden of showing that no genuine issue of material fact exists as to whether Plaintiff would have been able to maintain her position

21

as "secretary/bailiff" after Thompson's resignation had she not been discharged by Thompson. *See Zamora*, 449 F.3d at 1112 (citation omitted). The Court therefore declines to limit the period for Plaintiff's damages at this time.

## V.    Conclusion

For the reasons stated herein, the State's Motion for Summary Judgment (Doc. 37),  and Supplemental Motion for Summary Judgment (Doc. 83) are GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is GRANTED as to Plaintiff's Title VII hostile work environment, as well as to Plaintiff's claim for intentional infliction of emotional distress.  Summary judgment is DENIED, however, as to Plaintiff's claims of Title VII retaliation and wrongful discharge.

Further, Defendant Thompson's Amended Motion for Partial Summary Judgment (Doc. 45), is GRANTED IN PART and DENIED IN PART.  Summary Judgment is GRANTED as to Plaintiff's equal protection section 1983 claim, but is DENIED as to Defendant Thompson's argument that the time period of Plaintiff's damages should be limited as matter of law.

Finally, the Court declines to rule on Defendant Thompson's motion for summary judgment as to Plaintiff's section 1983 First Amendment claim at this time.  The parties are ordered to include discussion, applying each of the five steps of the *Garcetti/Pickering* analysis to Plaintiff's section 1983 First Amendment claim, in their trial briefs.  The parties should specifically address whether, in the context of her section 1983 First Amendment claim (as opposed to her Title VII retaliation

claim), Plaintiff can show that her speech was a substantial or motivating factor in her termination (as required by the fourth step of the *Garcetti/Pickering* analysis), given that said speech occurred *after* she was terminated.

**ORDERED THIS 4th DAY OF March, 2008.**

*Terence Kern*

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**